May it please the Court, I'd like to reserve half of my time for response and rebuttal, this being a cross-appeal. And before I start, I would be remiss if I didn't. How much time do you want to reserve for? Half of my time, ten minutes, Your Honor. Okay, but remember, if you reserve that much time, when it's time for your rebuttal, you're only able to argue matters that the appellees argued, to rebut them. We can't have you raise new matters then. I understand, Your Honor. I'm going to need to not only provide a rebuttal to their response to my argument, but also a response to their opening arguments on cross-appeal. And before I start, I would be remiss if I didn't. Note that my parents are in the courtroom here, including my father, David Crosby, who was my inspiration to become a lawyer and has argued many times before this Court. I'm grateful to have them here. There are three nested issues in Zillow's appeal. The first is whether this case should be dismissed for failure to comply with 17 U.S.C. section 411A, as interpreted by the Supreme Court in Fourth Estate. The second is whether there should only be one statutory damages award, because VHT's photographic database is a compilation under the statutory definition, 17 U.S.C. section 101. And then the third is if VHT's database is not a compilation, whether its registration should be found to be invalid, because that was the basis of registration by the Copyright Office. Of these three issues, the second one is actually, I think, the most important, because courts have struggled with it. It's one that is likely to recur, whereas Fourth Estate, the number of cases that have been decided or that were pending while that case was decided continues to diminish. It's probably almost gone. This might be the last of them. And so Zillow is, I think, I represent that Zillow would waive the Fourth Estate issue conditionally if the court would decide the statutory damages issue in its favor. And so with that representation, I'll start with the compilation issue. That doesn't sound like much of a waiver. Well, I think the point is that the court need not, so that the court need not reach the complicated issue of Fourth Estate and whether there has been a forfeiture because of the period between when it was decided and when this, all those issues can be put aside if the statutory damages issue is decided in Zillow's favor, even though it would result in a small award of damages that Zillow has already stipulated to VHT. So that's what I'm trying to put out on the table, but it is what it is. So statutory damages are statutory. They're only authorized to the extent they're provided in the statute. And as we're all textualists now, that's what this court did in the first VHT decision. It looked to the text of the statute to determine whether some collection of materials was a compilation for which only a single award of statutory damages was authorized. So the statute says that no matter the number of infringements, there's one award of statutory Once there are of a compilation, all of those parts count as one work for purposes of statutory damages. There is a definition in the statute of what a compilation is. It is a collection of materials or data that are selected, assembled, or coordinated for purposes or selected, arranged, or coordinated so as to form an original work of authorship in its own right. And what this court said in VHT is when we're looking at a collection of materials and determining whether all those materials, whether they're otherwise would be independent works or not, get one award of statutory damages, it is the statutory definition of compilation that matters. Let me just say I think that both parties spend too much time parsing each word of the original opinion and thereby sort of sidestepping the second issue, which you're talking about and that is, what do we have here? So I've gone through that opinion a number of times, as you might imagine, and each side has a reasonable argument for what it meant, but it all boils down to one thing. What do we have here? So my question is this. We know that the compilation designation by the Copyright Office is not definitive. So if we were to determine that what was registered was not a compilation, what was it that was registered then, in your view? I think nothing, because there needs to have been a compilation in order for that form of registration to have been effective and to have then flowed through under Alaska Stock to the individual photos. But there was one thing that this Court said very, very clearly in its opinion, and it said that if the database, the photography database, there's no dispute that every photo in this suit is saved in that database. It was saved in that database in the first instance. The copies that were later infringed on Zillow all came out of that database, and this Court said if that database is a compilation, then it's one work under the statute and VHT would be entitled to one award of statutory damages. And because this Court also said that it is the definition of compilation that counts, then the question that should have been answered on remand was, does VHT's photographic database meet the definition of compilation under the statute? And that question was never answered on remand. What the District Court looked to was the photos as they were used on digs and as they were used by Zillow. It said, well, that doesn't, that's not a compilation. But the question that this Court put, this threshold question before you then even get to whether these photos then would qualify as independent works is, does it meet the statutory definition? Well, I agree with you that the perspective you have to look from is the copyright holder, not the copyright infringer in determining that. So that brings us back to the $100 million question again, and that is, is it a compilation? And do you think you could interpret Alaska Stock as saying that it could be a compilation, but that you also with the compilation get registration in the underlying photos? You do get registration in the underlying photos, and that registration, the individual registration from the photos can have consequences in other areas. But for Section 504, it says for purposes of this section, for purposes of statutory damages, all the parts count as one work. They might count as separate works for other purposes, and Alaska Stock says to the extent that's relevant, then the individual registration of the photos through the database registration is effective. But for statutory damages purposes, the fact that they are parts of a compilation means you get one award no matter how many are infringed, no matter how many works are infringed. Let me say, if they had not chosen or elected statutory damages, then would each of those twenty-seven, approximately twenty-seven hundred photos stand on their own two feet for purposes of actual damages? That is a perfect example of where that distinction would matter. Yes, under Alaska Stock, the individual registration of the photos would support an award of actual damages, which in this case was $2.84 for each one of those twenty-seven hundred photos. But I want to make sure that it's clear, because there's cases that say the form of registration is not controlling, and I want to be clear, it's the fact that the database in fact meets the definition of compilation. That's the issue here. There was a declaration that was submitted in connection with the registration that attested to that fact, that attested to the selection of the photos, that attested to the arrangement of the photos. But it's not just the fact that they chose this database or this compilation registration mechanism, but it's the underlying fact that the database is a compilation. And it's not just the declaration that was submitted to the Copyright Office. There was testimony at trial that clearly established that the database itself meets the elements of compilation. And in fact, VHT admitted in its brief that the database meets the elements of compilation. That's at Red 56. There's no dispute as a factual matter that that database was selected and it was arranged by VHT's analyst. And I'll just, to take one of the many things quoted in our brief, so John Bosch for VHT, is it fair to say, Mr. Bosch, that VHT's master database is a compilation of the final images that VHT provides to its clients? Correct. That is factual testimony at trial that establishes that the database meets the elements of compilation. And that should be the end of the statutory damages issue. Could, the statute talks about a compilation including collective works. Could this be determined to be a collective work? Yes. It is, I think, well, yes, because a collective work is defined as a work that is assembled out of pre-existing works. And so here you have photographers who created the photographs and then VHT selected some of those photographs and arranged those photographs to put them into the compilation. And the definition of collective works underscores that a compilation can consist of works that are individually valuable in their own right. And yet, under Section 504, that collection is still entitled to only one award of statutory damages even if all of those would otherwise qualify as individual works, for example, for purposes of actual damages. So again, although we don't, we give some deference but don't view the Copyright Office as definitive, the Copyright Office seems to make some distinction between compilation in a database and a collective work because it suggests that if you have a collective work and it wasn't previously published, registered, or in the public domain, which I think would count for these photos, then the registration can extend to the works themselves, the individual works. It does extend to the works themselves. But all collective... If that were the case, if it extended to the work themselves, and it's a collective work, you're saying that by statutory definition, there can't be multiple works? There's only a single work? No, it counts as one work for purposes of statutory damages, solely for the purposes of statutory damages under the plain text of 504. And to be clear, not every collective work is a compilation. But a compilation, a collective work can be a compilation if that collective work has the attributes of selection, arrangement, or coordination. I've gone into my reserved time. I'll submit the Fourth Estate issue on the briefs unless there's something that gets said about it that I need to respond to or the court wants to pursue further the compilation or Fourth Estate or any other issue that we've raised in our direct appeal. Okay.  Thank you, Your Honor. Your Honor, I wonder if I might, in light of what counsel has reserved, reserve two minutes for rebuttal on the cross appeal, since Mr. Crosby reserved all of his argument on the cross appeal. Is that permissible? Understanding it would be limited to the cross appeal, Your Honor. Yes. Okay. Thank you, Your Honor. So I will endeavor to maintain my own time. So in the time I do have available with the court, I'd like to talk about three issues in this order, though recognizing what just happened to Mr. Crosby, I may not get to all three. I want to talk about compilation first because that was the focus of his argument. Then I do want to talk briefly about Fourth Estate, although Mr. Crosby did not talk about it. And then finally, I want to talk about the district court's decision, which we believe was erroneous, to reassess the jury's award for per image for statutory damages and the question of innocence, which we believe was not within the scope of the court's mandate, and that's the subject of our cross appeal. So let's start first with Zillow's appeal, and that is the question of compilation. And Zillow persists in treating this as a simple question of whether the database that was filed with the Copyright Office is a compilation. And essentially, they say that if that is the case, if it is a compilation, that's it. Game set and match, and there is only one award. The problem is twofold. First of all, if that were the issue, I can't imagine why the court remanded the case because we've never denied that it's a compilation. Indeed, we affirmatively advocated that it was. But more to the point, and more important, is the statute doesn't work that way. What the statute says, Mr. Crosby says we're all textualists now, the statute 504C1 begins by saying the copyright owner may elect to recover an award of statutory damages for all infringements with respect to any one work. And then it goes on with some other language and then concludes, for the purposes of this subsection, all the parts of a compilation or derivative work constitute one work. So the question about compilation comes into play once you determine what is the one work that is infringed. If it is a copyright, pardon me, if it is a compilation, there is one award. If it is separate independent works, there are multiple awards reflecting the fact that there have been multiple infringements. And so the question isn't whether the compilation, pardon me, whether the database is a compilation, the question is what work did Zillow infringe? Did it infringe a compilation, the searchable database, or did it infringe separate individual photographs? That is how every case on this compilation issue addresses it. Every case. And there's multiple circuits, about six or seven different circuits, they've had slightly different tests. But they all analyze it this way. What was infringed? Was that a compilation? And on this, Zillow errs because it treats the compilation question, the characterization of the work as compilation or not, as a binary issue. They treat it as though if it is a compilation for purposes of copyright registration, ipso facto it is a compilation for purposes of statutory damages. But that is not the way the Copyright Act works. It is wrong as a matter of law. Even if an economically viable image is included within a database, a compilation, it absolutely can live a distinct copyright life of its own and be entitled to separate damages. Give me your best support for that. There's dozens of cases, but the best and most pithy comes from Judge Kimball Wood. Now, granted, Judge Wood is a district court judge in the Southern District of New York, but she also happens to be the author of the Second Circuit's opinion in Bryant. So Your Honor cited Bryant with approval, Your Honors, we're citing Judge Wood. And Judge Wood says this in the Arista case, which we cite in our brief, it's 211 West Law 1311771, but again, we do cite it. She says, although the Copyright Act states that all parts of a compilation constitute one work, it does not say that any one work included in a compilation cannot also exist as a separate independent work. And so in that case, she contrasts the situation that she confronted in Bryant, where in that them as record albums, that's all the copyright holder ever did, with a situation where the copyright holder not only issued a box set, but also issued and sold individual songs. And she said, look, just because it's in the compilation, the box set, doesn't mean it can't exist as individual songs. And so in fact, you're entitled to individual separate awards for the works that are infringed, the individual works that are infringed. Now, can I interrupt for just a minute? Your adversary says that your analysis is right with respect to actual damages, but is not right with respect to statutory damages. How do you respond to that? I mean, there's no case that says that. I mean, I respond to that by saying there's seven or seven circuits or so that have addressed this issue. And I can run through them quickly if you want. And none of them has analyzed the issue that way. They all analyze the issue, as I'm describing, with respect to the question of statutory damages. Most recently is the Seventh Circuit decision in Sullivan, which Zillow barely mentions, which comes after this court's decision in VHT. And it summarizes the landscape of the law on this. And it analyzes it exactly as we described. They all reached the same conclusion that Judge Wood does, which is for purposes of statutory damages. Remember, what I just read to your Honor, Judge Fletcher, is straight out of her discussion of statutory damages in the ERISA case. And so it is clear as a bell that that is how it is analyzed across the board. And I might add, Your Honors, that in analyzing this question and actually getting to the nub of it, what Judge Robart did was he looked exactly at what Your Honors told him to look at to determine what was the work infringed. He looked at what was the form of copyright registration. He looked at did it have independent economic value. And then because Your Honors appeared to be saying there needed to be more than that, he looked at more than that. He went to the Bryant case, which is the Second Circuit case, typically seen as imposing the highest burden on someone seeking separate awards. He applied Bryant, faithfully applied Bryant, I should add. And he concluded that because in this case, as a matter of fact, Zillow issued its images on a per image or per property basis, that that combined with the fact that they had independent economic value overcame the fact that there was a single a single registration for a compilation and required that there be separate statutory awards. So what doesn't that make an effect that last sentence of subsection C about statutory damages kind of a nullity? No, not at all. I mean, look at Bryant, right? Bryant is a case where compilation was found, right? Because the the songwriters who issued two albums, one for dogs, one for cats, and all they issued was albums. And so the Second Circuit said, because that's the way you chose to market and sell, that's how you're going to be limited to your award, to awards. In Arista, Judge Kimba Wood, same author as Bryant, looks at it and she says, well, in this case, you actually marketed and sold individual songs. You are entitled to individual awards. What did the... I can't really answer. That's where you're kind of going later to whether there can be independent copyright status of individual parts. But doesn't that read out the parts of a compilation? What does that mean? Parts of a compilation? Well, it's exactly what we have. I guess we're not connecting, Your Honor, because that's exactly what Bryant is about. Bryant says the parts of the compilation are the songs. Right. OK. The issuers of the album says we want to recover for all those songs. And the court said, no, you can only recover for the albums because you sold albums. You didn't sell songs. Here, VHG didn't sell a database. That's not what it marketed. Well, but they had no economic... That kind of begs the question because they had that available and Zillow, we're presuming an infringement that Zillow decides to use A, B, C, D, and E, right? Which it didn't get from the database. Right. Correct. So then where you have these 2,700, where are they registered? They're registered in connection with the compilation because as Mr. Registration covers not just the compilation, but it covers the images. And I think... Can I stop there because I went back to read that very carefully. And Alaska Stock relates to collective works. And although collective works under the definition are included in compilation, isn't there a distinction then with whether it's collective work or not? Well, first of all, Alaska Stock involved exactly what we have here, a searchable database. But Alaska Stock characterized that as a collective work. And collective works encompass compilations, compilations encompass collective works. I mean, they are works that are comprised of multiple authors that are put together into a database. And by the way, Your Honor, one thing that's important, and I think the amicus brief in this case, which is unusually informative, talks about this. This sort of thing is absolutely essential. This sort of database that VHT has is absolutely essential to manage the business. But that's all it does. It manages the business. We don't sell this database. We don't market this database. It has never been licensed. And Judge Robar found as a matter of fact, and substantial evidence supports it, that the method that was used to license these images was individual and by property. And even the most strict cases out of the Second Circuit and the Eleventh Circuit and arguably the Fourth Circuit say that that's enough. And there are other cases, the Seventh Circuit, the First Circuit, other circuits, suggest you don't even have to go that far. You just stop at independent economic value. No court says, and Your Honors disclaimed the idea that the compilation registration itself would be dispositive. It's never been held to be dispositive. Of course, this guy is falling prediction of the amicus briefs was somewhat resolved, wasn't it? Once the Copyright Office instituted what it calls group registration. I can't speak to whether that completely resolved the issues, but I would say that all this, what Your Honor is pointing to is a reflection of the fact that what this is all about is a struggle of how to efficiently register thousands and thousands of images in a way that, number one, preserves the Copyright Office's resources. Number two, makes it unnecessary for artists like photographers to register photographs one by one. And I might add, it's not just me and the amici talking about that. That's in the House report that accompanies the 1976. I don't think anybody disputes that this is an effective way. Well, actually, Mr. Crosby in his brief kind of mocks that, but it is a congressional determination. And there has never been a hint that the idea is, while preserving this right to register, the idea is that now you can't recover to protect your images. Because I'll tell you, if Alaska stock doesn't mean that you can recover for each image infringed, if it means that you can only recover once for an infringement of a registered image, it is a cruel joke on the photographers. Because their livelihood depends on protecting their assets. And protecting a single compilation of hundreds of thousands of images is not going to help you if you only get one award for thousands of infringements. Nobody would do that. And that was the mechanism that was set up, cooperation between the industry and the Copyright Office, to protect photographers in situations like this. So, you know, I would go back to, because we talked so much about kind of this at the theoretical basis, what did Judge Robart do? What did the district court do? The district court did exactly what your honors told him to do. He said, the registration label isn't controlling, but it is a factor. And I find that that weighs in favor of finding that the works infringed were just one single work, the compilation. Then he said, did the works infringed have economic value? Did these thousands of images that Zillow infringed have independent economic value? He found, as a matter of fact, that they did have economic value. And that weighed in favor of finding that the works infringed were independent, were independent copyrightable assets. And finally, he asked whether VHT issued the images separately or as a compilation. And he relied on Bryant. This court cited Bryant. I would also add that Yellow Pages, the only other case that this court cited in its first opinion, is like Bryant in that it looks to see how did the copyright owner issued works, looked at those two cases, those principles and other cases. And it said that weighed in favor of 2,700 separate works being infringed. Why? Because as a matter of fact, VHT licenses its images on a per image or per property basis. That finding of fact is not challenged. That finding of fact, in all of the case law that one can find, is at least sufficient and in some circuits not even necessary. But it is at least sufficient in all circuits to satisfy a conclusion that, in fact, it was multiple works that were infringed. And balancing these factors, exactly what Your Honors told him to do, he found that each infringed image is the work for which separate award statutory damages is appropriate. That was the mandate that was given to Judge Robar. He faithfully fulfilled it, and we think he should be affirmed. Now, unless Your Honors have a question on that issue, I'm not going to talk about the Fourth Estate issue because of Mr. Cosby's conditional waiver, I guess. And his silence with respect to that issue. But I do want to spend a couple of minutes, very briefly, talking about our cross appeal. And I know I only have a couple of minutes left. But this is a case where Judge Robar went beyond what this court told him to do. He did exactly what Your Honors told him on the question of compilation, but then he went beyond and he reassessed the statutory damages that were awarded by the jury. And I mean the particular amount per image. And what's significant about that is that the mandate that this court issued did not say anything about that. The mandate said we vacate the finding of willfulness, period. And why would it be so limited? Because Zillow's appeal and all of its attacks on the question of willfulness were limited to that finding and not to the question of statutory damages. When you go back to the post-trial motions, which have to be the predicate, the springboard for the appeal, the post-trial motions say not one word about wanting to set aside the $1,500 per image award. And when that was raised in the opposition brief, Zillow said this in its reply. Zillow shouldn't face the stigma associated with the finding of willful infringement. And that portion of the jury's verdict should be vacated. Very specific. Judge Robart recognized that when he adjudicated the post-trial motion. And then on appeal, you can scour the briefs on the first appeal. They never once say we want that $1,500 per image award set aside. Never once. And your honors talk about the economic effects that can arise out of a willfulness finding, but your honors talked about the fact that you can then go above the statutory maximum for a standard infringement. They never talk about any other economic effect than that. They never asked for it to be set aside. The court didn't direct that it be set aside and retried. And so Judge Robart should have stopped with his finding on the compilation issue, which is exactly what your honors asked him to adjudicate. Let me ask you, in your view, is the finding on compilation a question of fact or a question of law or mix? Well, I think you've already said it's a mixed question of fact and law, and you cited Bryant for that proposition. And I think that other courts treat it that way as both a mixed question of fact and law. And I think, you know, the findings of fact that Judge Robart made stand unquestioned, right? So it's unquestioned that this was not issued as a database. And I think since we're back on that topic, let me close before I sit down by just saying that, you know, the reality is that the database of the sort we're talking about here is a database that every digital media company in the world has to have. That's how you manage your assets. And that's what is talked about in Alaska Stock. That's what's talked about in the amicus brief. You have to have that. You have to be able to find the images for yourself. And so that's what the purpose of that database is. It is not something that defines what the economic value of a particular image within it is. And it is not something that is marketed as a unit. It is marketed image by image or property by property. And that is exactly what Judge Robart found. And all of that counts us in favor of finding that what was infringed, what was infringed was not a single compilation, but 2700 separate photos that Zillow selected for their artistic value, not because of any arrangement or composition or any of the attributes associated with compilation. And so with that, I have 55 seconds left, which I will reserve to respond to whatever Mr. Crosby may say on my cross appeal. Thank you. Thank you, Your Honor. Okay, Mr. Crosby. Let me just want to briefly correct. So Mr. Rummage said something that was not accurate regarding this court's remand, this court's decision. He said that this court's decision vacated the jury's finding of willfulness. That is not what the opinion said. It said we vacate the jury's finding on willfulness. And that difference, that distinction makes a difference. Because the jury verdict form had a line that said willful infringement and filled in on that line was a number of images times 1500. That's the finding on willful infringement. Again, in our appeal, we appealed the willfulness component of the jury's verdict. That's how we phrased it. The component was both the number of images found to be willfully infringed and the damages attached to it. And to just take a step back, the fact that the damages number was also within the range for ordinary infringement does not mean that you can infer that the jury would have found the same thing if it had not found willfulness. The question that the jury answered was what is the number between $30,000 and $150,000 that would be appropriate statutory damages. It did not answer the question what is the number between $750,000 and $150,000. That's the question the jury answered. It did not answer the question what's the number between $750,000 and $30,000. And those are different questions. As if you went into a restaurant in a country where the tipping rate is normally 10% to 15% and one where it's 15% to 30%, what you leave as a tip in one country doesn't mean that you leave the same thing somewhere else. The framing matters. So Judge Robart properly recognized there was no finding by the jury that survived this court's opinion on what the damages would be for ordinary infringement. So to come back to the compilation issue, there's also something else Mr. Remage said that wasn't quite accurate. He said I think a couple of times VHT did not market the database. That's not true. In fact, this whole case started when VHT saw some of its photos on digs and approached Zillow and said, hey, we see you've got some of our images on there. We've got a whole bunch more. We'd like to license this whole database to you. There was an offer to license the whole database as a unit. And at trial there was evidence that was introduced that VHT, the reason that they put all this effort into creating this database was they wanted to essentially take this asset for which they were being paid by realtors to take photographs and essentially create a secondary value for it. And one of the secondary values that they were looking for was to be able to license the database as a whole. It's also not true that Zillow didn't get the copies from the database. The record is quite clear that the workflow was photographers take photographs. VHT saves those in the database. It sends a link to its customers to access the database and download the photographs from the database. And then those customers then put the photos into real estate listings which found their way to Zillow. Every single photo that was found to be infringed here originated, came from the original work. The one that was registered is saved in that database. Can I interrupt and ask a question? Yes. I asked your adversary to speak to the difference that you drew, the distinction you drew between actual damages and statutory damages with respect to this compilation issue. And he said there's no basis in law for that. And he said that all the cases in which they were lying allow for statutory damages where there's been registration of a compilation. How do you respond to that? I'm not aware of a case that awarded multiple. Let me just, every single one of the cases is one where a group registration, where the registration involved did not require an actual affirmative demonstration of compilation. So these were group registrations. And the issue was, was the group of works, did it meet the requirements of compilation or not? There's not a case that involves a collection that was registered in this way where there was an express claim of compilation. There's never been a case that I'm aware of. Let me ask the question a little more precisely. Where do you get the distinction between actual and statutory damages for purposes of dealing with this case? Right from Section 504 itself. 504 itself says for purposes of this provision, for purposes of statutory damages, all the parts of a compilation count as one work. So it carves out for this one limited purpose that we are not going to treat these, even if they might be, and this was in the legislative history, even though they might be separate works for other purposes. That's what the Senate report said. Even though they might be separate works for other purposes, for this purpose, they're considered to be one work. And the example of actual damages is, in fact, right here in this case, because there were a whole bunch of photographs in this case that didn't, for technical reasons, weren't eligible for statutory damages, but the registrations were effective. The registration as database was effective for those photographs as individual works, and it got, and VHT got an award of actual damages for every single one of those photos. So the distinction is alive right here in this room. Well, it's like we're talking from two different universes of cases, however, because he says there's not a single case where there is a compilation where they limited it to one work, where the underlying elements could also be viewed as individual works. Do you agree with that? I don't agree with that. So in Bryant, right, you had albums of individual songs, and those songs were individually valuable, and the reason you know they were individually valuable is the infringer copied both albums as a whole and also copied individual songs. That's right in the Bryant opinion. Nevertheless, even though the infringer, like Zillow, copied individual works, the copyright holder in Bryant only got a single award per album. So, you know, that case I think just belies that point. He then makes reference to Judge Wood's district court work, but then also in the Second Circuit opinion, basically saying that you do look to the underlying economic value of individual. I don't know if I want to say it's a work because work isn't defined in the statute, but with respect to individual songs or photos or something, and you look to that, and if it has independent economic value, then you no longer are limited to the statutory one work limitation. Only if you get past the threshold question of whether the individual work is part of a compilation or not. That's how this court set it up in VHT. Again, this is the law of the case. If the VHT photo database is a compilation and therefore one work for the purposes of the Copyright Act, then VHT would be limited to a single award of statutory damages for Zillow's use of thousands of photos on digs. Mr. Rummage just argued that the photo database can be a compilation, and nevertheless VHT would not be limited to a single award of statutory damages. Then this court went on and said, but if the database is not a compilation, then VHT could seek damages for each photo that Zillow used. And it called that... But Judge Robart determines it's not a compilation, right? Well, but he didn't apply the test that this court provided, right? Because this court said that it's the statutory definition of compilation that counts. And Judge Robart did not look at the database and say, is this the result of VHT selecting, arranging, and coordinating the parts? He never applied the definition to the database. So he did enter a finding, but basically said, because I find that it was the individual photos that were infringed, I therefore find that it's not a compilation, that the database is not a compilation under 101, which doesn't follow. And then when we pointed out, well, okay, that means the registrations are invalid, he then issued a second opinion and said, well, actually what I said before, it doesn't matter because I said the individual works were infringed, and so that was kind of dictum. The important thing is the form in which they were infringed. So it's not clear even whether he held on to that finding, but even if that finding is considered to be one that this court would review as a mixed finding of law, in fact, it was an erroneous application of the law as this court announced it that is at issue here. So this court should review that as a matter of law. And I think taking the undisputed fact, the admitted fact, which we just heard it admitted again, that the database meets the elements of compilation, it should follow with the syllogism. But then they say, well, you didn't really license the database. It sure tried. And the fact that the photos were also used individually, right, doesn't detract from the fact that they are still part of a compilation, and that's what the statutory text says. It says if they're part of a compilation, you know, it doesn't provide an exception for, oh, and if they're all, except if they're also distributed individually. The statutory text is unqualified. Okay, counsel, I'm sorry your time has expired, but I'll give you another two minutes to summarize. Anything else you want to say? Well, I hate to leave time on the table, but I felt like I had just made my point, but I would love if there are any further questions the court has, I'm happy to answer them. No questions here, Judge McKeon. Judge Fletcher, any questions? No, thank you. Okay, thank you very much for your argument. Now we'll hear from appellee. Thank you, Your Honors. I know I have 54 seconds left to respond on the cross-appeal only, so tempting as it might be, I will limit my remarks to that unless the court has questions. I would say on the cross-appeal that Mr. Crosby made an argument as to why the fact that the willfulness finding was vacated ought to result in vacating the statutory damages award of $1,500 per image. Good argument. The time to make it was on the first appeal. That's when he was challenging trial court rulings, and he should have said, if he wanted to make this argument, you know what, vacate the willfulness finding and vacate the award. He didn't say that ever, and this court did not direct that that be done. That's it. It's even worse, I should say, as to the innocence issue, because on the question of innocence, the jury made a finding as to which images were innocently infringed.  This court made no determination as to innocence, and it was not open to Judge Robart on remand to go back and say, well, I'm going to classify another 388 images as innocence, even though the jury already found the universe of images that were properly categorized as innocent was quite limited and limited to a completely different type and set of imagery. So with that, Your Honors, I have nothing further to add unless the court has questions on the cross-appeal or on the main appeal, and we appreciate the court's consideration. I have no questions, Judge. You and Judge Fletcher. If there are no questions, I'm going to thank counsel. We thank both counsel for their excellent arguments. It's a challenging case, and the case shall now be submitted, and the parties will hear from us in due course. Thank you, Your Honors.
judges: McKEOWN, FLETCHER, GOULD